# IN THE UNITED STATE DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Susan Adams-Diaz, : | |
|     Plaintiff, : | |
| : | Civil Action |
| v. : | |
| : | Demand for Jury Trial |
| Heritage Hills Associates, dba Heritage : | |
| Hills Golf Resort & Conference Center, : | |
|     Defendant : | |

## COMPLAINT

AND NOW, TO WIT, this 29th day of May 2012, comes the Plaintiff, Susan Adams-Diaz, by and through her counsel, Sara A. Austin, Esq., **Austin Law Firm LLC**, and does file the within Complaint as follows:

## PARTIES

1. The Plaintiff herein is Susan Adams Diaz, an individual who resides in York, Pennsylvania. Plaintiff is represented by Austin Law Firm LLC, 226 E. Market St., York, Pennsylvania 17403.

2. The Defendant herein is Heritage Hills Associates, dba Heritage Hills Golf Resort & Conference Center, a corporate entity with its base of operations at 2700 Mt. Rose Avenue, York, Pennsylvania, 17402.

## JURISDICTION

3. Plaintiff filed a charge with both the PHRC and EEOC in 2009.

1

4. By Notice dated 2/27/11 (and received by Plaintiff 2/29/12), the EEOC issued a Right to Sue letter (and dismissed the charges).

5. This action is being initiated within ninety (90) days after receipt of the Notice referenced in Paragraph 2 *supra*.

6. This action alleges violations of federal law under Title VII of the Civil Rights Act of 1964 (42 USC 2000E *et. seq.*), 42 U.S.C. §1981, 42 USC §1981A (with jurisdiction lies pursuant to 28 U.S.C. § 1331) and state law under the PA Human Relations Act, 43 P.S. §951 *et. seq*.

7. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(b) because Defendant is a Pennsylvania entity and has its headquarters and the majority of its operations in the District, Plaintiff resides in the District, and the events or omissions giving rise to the claim(s) herein occurred within the District.

**FACTUAL ALLEGATIONS**

8. Plaintiff became employed by Defendant as Catering Manager on 4/18/07.

9. In November 2008, Plaintiff was promoted to Executive Catering Manager.

10. The Defendant operates two (2) golf clubs in York County as well as a restaurant/bar in downtown York, in addition to a hotel in Lancaster County and a resort in Michigan.

11. During a meeting on or about 4/20/09, Plaintiff revealed to Ken Painter, Defendant's Food and Beverage Director and Plaintiff's supervisor, her relationship with and pending marriage to a Puerto Rican man.

12. Almost immediately after Plaintiff made Defendant aware of her relationship with the Puerto Rican man, Defendant began disciplining Plaintiff for actions or omissions also made by other employees who suffered no discipline.

13. Within a very short time after making Painter aware of the relationship with the Puerto Rican man, Painter, began talking about morals and treating Plaintiff differently than before the announcement and differently than other employees who acted similarly; examples include the following:

    a. Plaintiff attended two regularly-scheduled employee meetings. The meeting on 5/6/09 was an executive management meeting attended by Plaintiff, the executive chef, the executive director of hospitality, and the executive food and beverage assistant. The other meeting, on 5/13/09, was a managers' meeting attended by Plaintiff and all of Employer's managers. At both meetings Painter was leading a discussion on "morals" during which he made the following

3

comment each time: "We're judged on the people we choose to surround ourselves with. It's important for us to date within our tribe and mingle within our tribe."

    b. Complaints to the Defendant often resulted from faulty communication between departments, resulting in a customer not receiving what was requested. Prior to issuing a 5/14/09 discipline to Plaintiff, the Defendant had received complaints about events managed by Plaintiff as well as services/products from other departments, yet the Defendant meted out no discipline to other employees and no discipline was received by Plaintiff until the Defendant was made aware of her relationship and pending marriage to a Puerto Rican;

    c. The Defendant's time clock system would often automatically clock out an employee. On Mothers' Day weekend 2009, an employee worked nearly the entire weekend (a resulting 32 hour shift). Because of the extended shift, there were hours that were not accounted for in Defendant's timing/payroll system. Upon receiving her paycheck, the employee and Plaintiff examined the hours actually worked but not paid because of the time clock issue. Plaintiff issued a make-up pay request on this basis. This practice was often done in the past by Plaintiff and other employees without discipline to anyone but Plaintiff after the Defendant was made aware of Plaintiff's relationship with a Puerto Rican on 4/20/09;

4

d.  Between 4/20/09 and 8/12/09, Plaintiff was subjected to personal conversations with Painter wherein he often stated that he "was disappointed" in Plaintiff for the choice she made to be involved with and marry a Puerto Rican. During the same time period, Plaintiff was involved in numerous employee/ manager meetings during which Painter would have open discussions with the attendees about Plaintiff's "controversial" relationship, asking "So, what are we going to do about the Mo thing?"[1]

e.  On 6/24/09 Plaintiff received three (3) successive adverse employment actions in the form of written warnings, each for behavior that Plaintiff and other employees often engaged in prior to 4/20/09 and for which behaviors the Defendant disciplined no other employee or Plaintiff prior to 4/20/09;

f.  Plaintiff was often called upon by Defendant's management, supervisors, and other employees for the use of equipment or facilities belonging to the Defendant. Most managers considered it a perk, and the Defendant knew about it. For example, (i) Plaintiff was requested by Defendant's comptroller to supply company chairs for a personal event, (ii) Plaintiff was requested by one of the Defendant's directors to supply a company grill for a personal event, and (iii) other employees had often used company-owned catering equipment, linens, delivery trucks, and other pieces of equipment. Further, other employees often used

---

[1] Mo is the nickname for the Puerto Rican employee with whom Plaintiff was involved and eventually wed.

5

company computers and other office equipment for personal reasons with the Defendant's knowledge and acquiescence. This practice of employees, managers, and supervisors using company equipment and resources located at any of the Defendant's locations, doing so at will and without any type of permission from Defendant's owner, occurred often during Plaintiff's tenure without discipline to anyone but Plaintiff on 8/12/09, a date after she made the Defendant aware of her relationship with a Puerto Rican;

      g.     Plaintiff was the only catering manager for the Defendant and was responsible for all events at each of the Defendant's establishments. Often events occurred at the same time in various locations, and it was impossible for Plaintiff to be at each one the entire time. Plaintiff covered every event using the staffing that the Defendant gave her, using assistant catering managers if needed. There were times when events did not have Plaintiff's direct attendance from beginning to end, but this practice occurred often in the catering department and other departments by other employees without discipline to anyone but Plaintiff after 4/20/09 when Defendant was made aware of Plaintiff's relationship with a Puerto Rican; and

      h.     Defendant terminated a number of employees the day after they testified in favor of Plaintiff at an unemployment compensation hearing.

6

14. On 4/21/09, Painter sent Plaintiff an email clearly pointing to her relationship with the Puerto Rican in a derogatory fashion. A true and correct copy of the email is attached hereto and incorporated herein as Exhibit "A".

15. Plaintiff was terminated based on an action in alleged violation of policy (a) that was not evenly enforced by Defendant and (b) for which Plaintiff was never warned.

16. Other employees who acted in similar or more egregious ways than Plaintiff's alleged action(s) were either not disciplined at all or received discipline other than termination.

17. The only difference between Plaintiff and those other employees is that Plaintiff was romantically involved with a Puerto Rican.

18. Rebecca Reyes Powers, an Hispanic female and a former human resources employee for the Defendant, was discharged in Spring 2009 for actions also taken by non-Hispanic employees to whom neither discipline nor discharge was meted out.

19. Plaintiff believes and therefore avers that the uneven disciplinary action taken by Defendant against Plaintiff was based on illegal discrimination in violation of applicable statutes.

7

## COUNT I – Racial/Ethnic Discrimination

20. Paragraphs 1-19 above are incorporated herein by reference as if set forth at length.

21. Plaintiff was in a relationship with, and eventually wed, a man from Puerto Rico.

22. Defendant's employee and agent, Painter, is Caucasian.

23. Painter is prejudiced against Hispanic persons and those involved with Hispanic persons.

24. Defendant's disciplinary actions against Plaintiff -- after being made aware of her relationship with a Puerto Rican -- were intentional, without justification, and in violation of applicable statutes.

25. As a direct result of Defendant's unlawful conduct, Plaintiff suffered substantial damages in an amount to be determined at trial.

WHEREFORE, Plaintiff, Susan Adams Diaz, respectfully requests that this Honorable Court enter an Order as follows:

    a.    Finding that Defendant violated applicable statutes;

    b.    Entering judgment in favor of Plaintiff and against Defendant based on this Complaint;

    c.    Awarding Plaintiff compensatory and punitive damages;

    d.    Awarding Plaintiff her costs, expenses and attorneys' fees;

e.  Award Plaintiff pre- and post-judgment interest; and

f.  For such further and additional relief as is just and proper.

## DEMAND FOR JURY TRIAL

26. Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted,

/s/ Sara A. Austin
Sara A. Austin, Esq.
ID# 59052
**Austin Law Firm LLC**
5226 E. Market Street
York, PA 17403
717.846.2246 phone
Counsel for Plaintiff

## **VERIFICATION**

The undersigned does hereby affirm, based on information provided to her by the Plaintiff, that the facts contained in the foregoing Complaint are true and correct to the best of her knowledge, information and belief. This statement is made subject to the penalties relating to unsworn falsification to authorities.


DATED:   5/29/12                     /s/ Sara A. Austin
                                     Sara A. Austin, Esq.